IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAY C. FERRARA,

    Petitioner,

v.

MRS. JERI TAYLOR,

    Respondent.

Case No. 2:14-cv-00458-SI

OPINION AND ORDER

Anthony D. Bornstein, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Murder and Felon in Possession of a Firearm. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

On January 1, 2004, petitioner dialed 9-1-1 from his trailer in Cottage Grove asking for help. When officers arrived, they found petitioner's girlfriend, Teresa Sirota, lying dead on the floor of the trailer. Petitioner made inconsistent statements to the police regarding the events that had transpired. When the officers first arrived on the scene, petitioner told them that he did not know what happened. Trial Transcript Vol. I, p. 34. Dispatch had advised one of the officers that there was a gunshot victim, and when the officer asked petitioner where the gun was, petitioner claimed he did not know. *Id* at 32, 34. Petitioner also indicated to a different officer that there was no gun at all. *Id* at 98. He also told officers that Sirota had clutched her chest and said, "Oh, my heart" before lying down on the floor, implying that she had suffered a heart attack. *Id* at 100; Trial Transcript Vol IV, p. 164.

Sirota's eight-year-old boy, NS, initially told police that he and petitioner discovered his mother on the floor of the trailer

2 - OPINION AND ORDER

when they returned from a walk. Trial Transcript Vol. VI, p. 39. After NS discovered that his mother was dead, he indicated to police that he had not told them the truth because he was afraid of petitioner, and that he had actually witnessed petitioner shoot Sirota. Trial Transcript Vol. IV, pp. 33-34, 67-70, 81-82. When the medical examiner arrived on the scene, he found a bullet hole in the victim's head, and police located a handgun hidden under the porch of the trailer that forensics would ultimately link to the murder. Trial Transcript Vol. I, pp. 115, 194.

At petitioner's ensuing bench trial, he claimed that he and Sirota were both intoxicated and that the shooting had occurred while they struggled for the gun such that he was guilty only of manslaughter. Sirota's son testified that his mother and petitioner were engaged in a verbal and physical altercation, and he saw petitioner put a handgun to the back of his mother's head and shoot her. Trial Transcript Vol. IV, pp. 67-71, 111-112, 154-155. The trial court determined the boy's testimony to be credible and found petitioner guilty of Murder and two counts of Felon in Possession of a Firearm. Trial Transcript Vol VII, p. 175. As a result, the court sentenced petitioner to life in prison with a 25-year minimum term. Trial Transcript Vol. VIII, pp. 17-18.

Petitioner took a direct appeal where the Oregon Court of Appeals granted partial relief as to the trial court's restitution order, but otherwise affirmed his convictions and sentence. *State*

*v. Ferrara*, 218 Or. App. 57, 178 P.3d 250 (2008). The Oregon Supreme Court denied review. 344 Or. 539, 186 P.3d 285 (2008).

Petitioner next filed for post-conviction relief ("PCR") in Marion County where he claimed, in part, that trial counsel was ineffective when he failed to ensure forensic testing of Sirota's hands for gunshot residue to support a theory that the victim committed suicide. Respondent's Exhibit 109, p. 2. He claimed that when he advised his trial attorney that Sirota had taken her own life while he was outside the trailer, counsel told him the story was simply not believable "and that was pretty much the end of it." Respondent's Exhibit 123, pp. 10-14. The PCR trial determined that a suicide theory was not plausible, found petitioner not to be credible, and denied relief. Respondent's Exhibit 133, p. 7. The Oregon Court of Appeals affirmed that decision without opinion, and the Oregon Supreme Court denied review. *Ferrara v. Premo*, 258 Or. App. 682, 311 P.3d 1252, *rev. denied*, 354 Or. 597, 318 P.3d 749 (2013).

Petitioner filed his Petition for Writ of Habeas Corpus on March 20, 2014 wherein he raises four grounds for relief:

> **Ground One**: Ineffective assistance of trial counsel: Failure to impeach States witness.
> **Supporting Facts**: States Medical Examiner testified the only gunshot residue test he made on the victim was done visually and did not find any G.S.R.
>
> **Ground Two**: Ineffective assistance of trial counsel: Failure to ensure particular forensic testing.

4 - OPINION AND ORDER

> **Supporting Facts**: Failure to obtain and secure forensic testing on the victim's hands for Gunshot residue, before the State ordered the body cremation.
>
> **Ground Three**: Ineffective assistance of trial counsel: Failure secure forensic testing for H.V.B.S.
> **Supporting Facts**: Trial counsel failed to have any forensic testing done for High velocity blood spatter, on the victim's body or clothes.
>
> **Ground Four**: Ineffective assistance of trial counsel: Failure to introduce mental health issues of the victim.
> **Supporting Facts**: Trial counsel failed to introduce evidence concerning the victim's mental health issues, for over the past ten year's.

Petition for Writ of Habeas Corpus (#2), pp. 6-7.

Respondent asks the court to deny relief on the Petition because: (1) petitioner fails to support Grounds One, Three, and Four with briefing; (2) petitioner failed to fairly present Grounds One, Three, and Four to Oregon's state courts, leaving them procedurally defaulted; and (3) petitioner's claims lack merit.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an

5 - OPINION AND ORDER

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

## II. Unargued Claims

Petitioner raises four grounds for relief in his Petition, but in his supporting memorandum he elects to offer argument only in support of his Ground Two claim of ineffective assistance of

6 - OPINION AND ORDER

counsel. Petitioner does not argue the merits of his remaining claims, nor does he address respondent's contention that Grounds One, Three, and Four are ineligible for review on their merits due to procedural default. As such, petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims). Even if petitioner had supported these claims with argument, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

### III. Ground Two: Failure to Test for Gunshot Residue

In his remaining claim, petitioner alleges that his trial attorney rendered ineffective assistance when he failed to have the victim's body tested for gunshot residue. Where there were only three individuals present at the time of the shooting, and where petitioner's own clothes were tested by the State and did not reveal gunshot residue, he believes it was incumbent upon counsel to test the victim's hands before ruling out a suicide defense. He asserts that when counsel failed to do so and Sirota's body was cremated shortly after the State's autopsy, he lost any opportunity to present a defense that the victim had killed herself.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether

7 - OPINION AND ORDER

petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

The PCR trial court concluded that trial counsel performed competently. In doing so, the PCR trial court issued an Opinion Letter in which it made certain findings pertaining to petitioner's suicide theory:

> 1. The shot entered the skull almost in the middle of the back of the head . . .

8 - OPINION AND ORDER

> while physically not impossible it is not generally first thought as to how one might kill themselves.
>
> 2. Even if the court entertains such a possibility as the judge no doubt did, the gun was found outside the trailer house under the porch. [] This means that [the] victim would have had to have walked outside after shooting oneself in the skull, and placing the gun on safety and hiding it, and then walked back in and fell on the floor. Even if the court could find this possible, it just does not make any sense. Why would a person want to hide the instrument of her death?
>
> Such findings lead to the conclusion that suicide was not plausible. For one thing, Petitioner testified to this court . . . that he was outside at the time he heard a noise sounding like a cupboard or something slamming and he and [NS] went in. Petitioner testified that he saw <u>her fall out of the chair</u>. [] If it actually happened this way, then he could have seen her come outside to hide the gun. On the other hand, with a young man who might by his years not necessarily been expected to have gotten all the facts out in a consistent manner, if believed, added the following: He overheard Mom and Petitioner fighting in the next room, and by leaning in his bed, witnessed the events. "I know Mom didn't have a gun." "I was watching." "I saw him shoot her." "Mom didn't mess with the gun." Despite credibility issues, if that testimony is believed, as it most likely was, the impeachment on other matters was not germane to the decision. Little else matters.
>
> Even without his testimony, the trial court had the opportunity to consider Petitioner's claim that Ms. Sirota took her own life. [] As a part of that consideration, Petitioner's inconsistent statements which became part of the record may not have helped his cause e.g. Petitioner told one officer that there was no gun, and told another that

9 - OPINION AND ORDER

>       he did not know where the gun was. [] Under
>       the circumstances and the Petitioner's
>       testimony here, this Court finds Petitioner
>       not credible.

Respondent's Exhibit 133, pp. 6-7 (underlining in original).

The PCR trial court also made the following factual findings:

>    1.  Petitioner did not submit any proof that useful evidence would have been acquired if Teresa Sirota's hands had been tested for gun shot residue and trace metal.
>
>    2.  Dr. Wilson, the medical examiner, testified that when he examined T[]eresa Sirota's extremities prior to performing the autopsy, he inspected her hands and did not find any signs of gun residue.

Respondent's Exhibit 134, p. 3.

As an initial matter, petitioner contends the PCR trial court made an unreasonable determination of the facts in light of the evidence presented when it found the gunshot wound was "almost in the middle of the back" of Sirota's head. He claims that the gunshot wound was actually behind the victim's left ear, something that makes it more likely that she committed suicide than if the wound had been at the center of the back of her head. A review of the autopsy photographs in the record reveals that, consistent with the PCR trial court's factual finding, the gunshot wound was near the center of the back of Sirota's head. Respondent's Exhibit 130. As such, the finding was a reasonable one.

Petitioner also believes there was no strategically sound reason for counsel to forego forensic testing of Sirota's hands for

gunshot residue so as to fully explore a suicide theory, and points out that counsel faulted the State in his closing argument for not conducting such testing. See Trial Transcript Vol. VII, p. 139. However, as the PCR trial court determined, such a theory simply was not plausible given the facts of this case where: (1) NS testified as an eyewitness that he saw petitioner kill Sirota; (2) the murder weapon was found hidden under the front porch outside of the trailer, something Sirota could not possibly have accomplished after shooting herself inside the trailer; and (3) petitioner gave a variety of inconsistent statements to authorities at the crime scene, including a representation that Sirota was lying on the floor of the trailer because she suffered a heart attack. Where the suicide theory was wholly implausible, counsel's performance did not fall below an objective standard of reasonableness when he did not further explore the theory by way of forensic testing.

Even assuming counsel should have tested Sirota's hands for gunshot residue, petitioner failed to demonstrate that he was prejudiced by any such omission. Specifically, he failed to show the PCR trial court what such a test would have yielded had it been performed, and conceded as much during his PCR deposition. Respondent's Exhibit 123, p. 27. Although Sirota's body was cremated shortly after the State's autopsy making it impossible for petitioner to obtain such information in preparation for his PCR

trial, it was nevertheless his burden to prove his claim at the PCR trial. *See Lotches v. Premo*, 257 Or. App. 513, 517, 306 P.3d 768, 772 (2013) (PCR is a statutory civil cause of action where the petitioner bears the burden of proof). Instead, he offered only speculation that there *may* have been gunshot residue on Sirota that *might* have supported a suicide theory. Given that plaintiff's Ground Two claim relies on speculation, failed prove that any failure on the part of his trial attorney prejudiced him. *See Horn v. Hill*, 180 Or. App. 139, 148-49, 41 P.3d 1127 (2002) ("Where evidence omitted from a criminal trial is not produced in a post-conviction proceeding . . . its omission cannot be prejudicial"). Accordingly, the PCR trial court's decision did not involve an unreasonable application of clearly established federal law.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.
DATED this 23rd day of October, 2015.

Michael H. Simon
United States District Judge

12 - OPINION AND ORDER